## COMMONWEALTH *vs.* LUCIEN E. ARRINGTON.

Hampden. October 5, 2009. - December 7, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Evidence,* Previous testimony of unavailable witness, Hearsay. *Practice, Criminal,* Motion in limine, Hearsay.

A District Court judge did not abuse her discretion in allowing the criminal defendant's motion in limine to exclude, from his trial on a complaint charging him with assault and battery, the prior recorded testimony of a complainant who died before trial, where the testimony did not qualify as an exception to the rule against hearsay, in that the complainant's testimony, given at a pretrial detention hearing, was unreliable because of her medical condition at the time, and in that, although the defendant had a similar motivation at the pretrial detention hearing for cross-examining the complainant with respect to the assault and battery, her medical condition was such that he lacked a reasonable opportunity to do so. [441-446]

COMPLAINT received and sworn to in the Springfield Division of the District Court Department on May 24, 2007.

A motion in limine to exclude prior testimony was heard by *Nancy Dusek-Gomez,* J.

An application for leave to file an interlocutory appeal was allowed by *Spina,* J., in the Supreme Judicial Court for the county of Suffolk, and the case was reported by him.

*Shelly-Ann Sankar,* Assistant District Attorney (*Jane Davidson Montori,* Assistant District Attorney, with her) for the Commonwealth.

*Sarah E. Dolven* for the defendant.

SPINA, J. At issue in this case is whether a judge in the District Court properly allowed a motion in limine filed by the defendant, Lucien E. Arrington, to exclude the prior recorded testimony of a complainant who died before trial. The Commonwealth sought leave to file an interlocutory appeal, see Mass. R. Crim. P. 15 (a) (2), as appearing in 422 Mass. 1501 (1996), which was allowed by a single justice of this court. See *Commonwealth* v.

*Anderson*, 401 Mass. 133, 135 (1987). We now affirm the order allowing the defendant's motion in limine.

We begin with an overview of the factual and procedural background, reserving additional details for our discussion of the specific issue raised. The defendant and the complainant, Kimberly Mann, were involved in a romantic relationship for approximately six years, and they lived together in Springfield. In October, 2006, Mann was diagnosed with terminal lung and bone cancer. Four months later, her mother, Barbara Griffin, moved from Pennsylvania to Massachusetts to live with and care for Mann, who was receiving hospice care for pain management, but no other cancer treatment.

On May 6, 2007, Mann and the defendant were alone in their home when the defendant allegedly became enraged because Griffin had moved in with them. According to Mann, the defendant struck her numerous times on her face, arms, and head. He also allegedly kicked her and struck her with the infusion pump that dispensed her pain medication. Mann telephoned Griffin, who was visiting relatives that evening, to tell her that the defendant was "beating" her; Griffin, in turn, telephoned 911 and the hospice program. The police arrived at Mann's home, but the defendant had left the premises. Mann refused medical care, preferring to wait for assistance from her hospice worker. The defendant was not arrested.

On May 10, 2007, Mann obtained a protective order pursuant to G. L. c. 209A. Shortly thereafter, she filed with the Springfield Division of the District Court Department an application for a criminal complaint, alleging that the defendant "beat [her] from head to foot." On May 24, 2007, a complaint issued against the defendant charging him with one count of assault and battery, in violation of G. L. c. 265, § 13A (*a*). He was arraigned with appointed counsel present on June 7, 2007, and tendered a plea of not guilty. The court set the defendant's bail at $150 in cash or surety, with the condition that he stay away from Mann, and the defendant was advised of the potential for bail revocation under G. L. c. 276, § 58, if he were charged with committing a subsequent offense during the period of his release.

On June 29, 2007, a complaint issued against the defendant charging him with eight counts of violating the abuse prevention order by making telephone calls to Mann. On July 5, 2007,

the defendant was arraigned with different appointed counsel. That same day, the Commonwealth filed a motion to revoke the defendant's bail pursuant to G. L. c. 276, § 58,[1] on the assault and battery charge, and a motion for the defendant's pretrial detention under G. L. c. 276, § 58A.[2] A District Court judge conducted a dangerousness hearing on July 9, 2007, at which the defendant was represented by his second appointed counsel. Mann testified under oath about the events that transpired in her home on May 6, and about the defendant's subsequent attempts to contact her by telephone. At the time she gave her testimony, Mann clearly was medicated, and the prosecutor requested leeway from the judge to lead the witness, which was allowed. At the conclusion of the hearing, the judge denied the Commonwealth's motion to revoke the defendant's bail on the assault and battery charge. He did not make a specific finding that the defendant was dangerous and should be detained prior to trial. Instead, the judge set the defendant's bail at $250,000 personal surety on the case alleging the G. L. c. 209A violation, required that he be fitted with an electronic monitoring device, and ordered that he have no

[1]In relevant part, G. L. c. 276, § 58, third par., provides: "If a person is on release pending the adjudication of a prior charge, and the court before which the person is charged with committing a subsequent offense after a hearing at which the person shall have the right to be represented by counsel, finds probable cause to believe that the person has committed a crime during said period of release, the court shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community. . . . If the court determines that the release of said person will seriously endanger any person or the community and that the detention of the person is necessary to reasonably assure the safety of any person or the community, the court may revoke bail on the prior charge and may order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days."

[2]General Laws c. 276, § 58A, allows the Commonwealth to seek, based on dangerousness, the pretrial detention of individuals accused of certain serious offenses, including the violation of an order of protection issued under G. L. c. 209A. If, after a hearing pursuant to the provisions of G. L. c. 276, § 58A (4), the District Court judge "finds by clear and convincing evidence that no conditions of release will reasonably assure the safety of any other person or the community, said [judge] shall order the detention of the person prior to trial. A person detained under this subsection shall be brought to a trial as soon as reasonably possible, but in absence of good cause, the person so held shall not be detained for a period exceeding ninety days excluding any period of delay as defined" in Mass. R. Crim. P. 36 (b) (2), as amended, 422 Mass. 1503 (1996). G. L. c. 276, § 58A (3).

contact with Mann, either directly or indirectly. On July 21, 2007, Mann passed away.

On January 17, 2008, the defendant filed a motion in limine to exclude Mann's prior recorded testimony from evidence in his assault and battery trial[3] on the ground that its introduction would violate his confrontation rights under the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights.[4] After a nonevidentiary hearing, the same judge who had conducted the pretrial detention proceeding denied the defendant's motion, concluding that Mann's testimony could be admitted at trial. The defendant filed a motion for reconsideration. On April 14, 2008, the judge conducted another hearing and decided that the motion in limine should be addressed by the trial judge.

The case proceeded to trial on August 14, 2008, before a different District Court judge. After first hearing arguments on the defendant's motion in limine, the judge allowed the motion. The judge stated that the transcript of the pretrial detention hearing showed that Mann "was medicated," that this issue surfaced during her examination at the hearing with respect to her ability to recollect, that the presiding judge questioned Mann's "reliability" even though he allowed her to testify and made no subsidiary findings, and that "there was in essence no cross-examination as to the assault and battery although [there were] four or five questions about telephone calls and a deed." Taking all of those facts into consideration, the judge concluded, based on applicable case

---

[3]It appears from the record that the Commonwealth filed a motion in limine to admit Mann's prior recorded testimony from the pretrial detention hearing.

[4]The Sixth Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment to the Federal Constitution, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." The right of confrontation also is protected by art. 12 of the Massachusetts Declaration of Rights, which provides that in a criminal trial "every subject shall have a right to . . . meet the witnesses against him face to face." Although art. 12 has been interpreted to provide a criminal defendant more protection than the Sixth Amendment in certain circumstances, see *Commonwealth* v. *Amirault*, 424 Mass. 618, 631-632 (1997), "in cases like this one involving the hearsay rule and its exceptions, we have always held that the protection provided by art. 12 is coextensive with the guarantees of the Sixth Amendment." *Commonwealth* v. *DeOliveira*, 447 Mass. 56, 57 n.1 (2006).

law, that Mann's prior recorded testimony should be excluded from the defendant's assault and battery trial.[5]

The Commonwealth now contends in this appeal that the judge acted beyond the scope of her authority in allowing the defendant's motion in limine. In the Commonwealth's view, Mann's testimony plainly meets the requirements for admissibility of prior recorded testimony. We disagree.[6] Further, because we conclude that Mann's testimony is not admissible as an exception to the hearsay rule, we need not address whether the introduction of such testimony at trial would violate the defendant's confrontation rights under the Sixth Amendment and art. 12.

In our recent decision in *Commonwealth* v. *Nardi*, 452 Mass. 379, 391-392 (2008), we articulated the analytical framework for considering the admissibility of an out-of-court statement: "In the wake of the United States Supreme Court's decisions in *Crawford* v. *Washington*, 541 U.S. 36 (2004) (*Crawford*), and *Davis* v. *Washington*, 547 U.S. 813 (2006) (*Davis*), we have held that the admissibility of an out-of-court statement is to be determined by a two-part inquiry. '[A] statement must first be evaluated for admissibility under normal evidence rules, i.e., whether it qualifies as a hearsay exception.' *Commonwealth* v. *Burgess*, 450 Mass. 422, 431 n.6 (2008). 'Then, the statement must be appraised under the criteria of *Crawford-Davis* and *Commonwealth* v. *Gonsalves*, 445 Mass. 1, 3 (2005)[, cert. denied, 548 U.S. 926 (2006)], to determine if it satisfies the confrontation clause of the Sixth Amendment,' *id.*, that is, whether the statement was testimonial." See *Commonwealth* v. *Diaz*, 453 Mass. 266, 277 (2009).

---

[5]At the proceedings on August 14, 2008, the defendant initially pleaded guilty to eight counts of violating the abuse prevention order, issued pursuant to G. L. c. 209A, by making telephone calls to and leaving messages for Mann on her cellular telephone. The judge informed the defendant that she would sentence him to six months in a house of correction. Consequently, the defendant withdrew his guilty pleas. It appears from the criminal docket that on September 24, 2008, the defendant pleaded guilty to those eight counts and was sentenced to time served.

[6]A motion in limine is intended to preclude the admission of irrelevant, inadmissible, or prejudicial matters in evidence. See *Boston* v. *Board of Educ.*, 392 Mass. 788, 796 (1984). Such evidentiary rulings are left to the sound discretion of the trial judge, and we review only for abuse of that discretion. See *Commonwealth* v. *Gonzalez*, 443 Mass. 799, 805 (2005).

In accordance with this analytical framework, we begin by considering whether Mann's prior recorded testimony from the defendant's pretrial detention hearing on July 9, 2007, qualifies as an exception to the hearsay rule. Before such testimony can be admitted in evidence, the party offering it must show that "the prior testimony was given by a person, now unavailable, in a proceeding addressed to substantially the same issues as in the current proceeding, with reasonable opportunity and similar motivation on the prior occasion for cross-examination of the declarant by the party against whom the testimony is now being offered."[7] *Commonwealth* v. *Trigones*, 397 Mass. 633, 638 (1986), quoting *Commonwealth* v. *Meech*, 380 Mass. 490, 494 (1980). See *Commonwealth* v. *Clemente*, 452 Mass. 295, 313 (2008), cert. denied, 129 S. Ct. 1329 (2009). See also Mass. G. Evid. § 804 (b) (1), at 268, 279-280 (2008-2009). Prior recorded testimony may be admissible as an exception to the hearsay rule because it is deemed to be a reliable communication about relevant issues at the time it is given. See *Commonwealth* v. *Clemente*, *supra.* See also M.S. Brodin & M. Avery, Massachusetts Evidence § 8.4.1, at 491 (8th ed. 2007) (exceptions to hearsay rule based on "a guarantee of trustworthiness in the circumstances surrounding the making of the particular declaration for which an exception is created"). Contrast *Commonwealth* v. *Almeida*, 433 Mass. 717, 719 (2001) (admission of out-of-court statements made while complainant was sleeping would run counter to central principle that hearsay evidence be reliable).

Neither party here has challenged the fact that Mann is unavailable to testify, given her death on July 21, 2007. Accordingly, we focus on the reliability of her testimony given at the defendant's pretrial detention hearing, and on the defendant's opportunity and motivation for cross-examination.

---

[7]The admissibility of prior testimony also depends on a reliable record or report of the former testimony. See *Commonwealth* v. *Bohannon*, 385 Mass. 733, 746-747 (1982). A transcript of sworn testimony constitutes a suitable record. See G. L. c. 233, § 80 (stenographic transcripts, when properly verified, are admissible as evidence of testimony given at court proceeding). See also *Commonwealth* v. *Mustone*, 353 Mass. 490, 492 (1968); M.S. Brodin & M. Avery, Massachusetts Evidence § 8.18, at 558 (8th ed. 2007). Here, we have a certified transcript signed by a tape transcriber of the defendant's pretrial detention hearing held on July 9, 2007, and the parties have not claimed that it is unreliable or deficient.

At the pretrial detention hearing, the judge had called into question Mann's reliability as a witness when, after Mann stated during her direct examination, "I'm sorry, my medicine is kicking in on me," the judge subsequently said, "Testimony given when the person is in that cognitive state cannot be found to be reliable."[8] The judge did not make a specific ruling that Mann's testimony was inadmissible. See *Commonwealth* v. *Whelton,* 428 Mass. 24, 26 (1998) (judge has broad discretion in determining admissibility of evidence). Nonetheless, based on the judge's statement, we reasonably can infer that, given the fragile state of Mann's health and the effects of her medication, he did not deem her testimony reliable. The fact that the judge later stated that the Commonwealth had sustained its "burden of proving that the crime was committed" did not render Mann's testimony reliable where the defendant's son testified at the hearing that his father had made telephone calls to Mann, which plainly violated the G. L. c. 209A order.

Mann's testimony was unreliable not only because of her medical condition at that time, but also because, as a related matter, defense counsel did not have a reasonable opportunity to cross-examine her with respect to the assault and battery.[9] See *Commonwealth* v. *Martinez,* 384 Mass. 377, 381 (1981) (one neces-

---

[8]The issue of Mann's reliability is distinct from the issue of her competency. Every person is competent to be a witness, except as otherwise provided by G. L. c. 233, § 20, or our common law of evidence. See Mass. G. Evid. § 601, at 163 (2008-2009). The courts of this Commonwealth have applied a two-prong test to determine competency: whether the witness has the general ability or capacity to (1) "observe, remember, and give expression to that which she ha[s] seen, heard, or experienced"; and (2) "comprehend the difference between truth and falsehood." *Commonwealth* v. *Brusgulis,* 398 Mass. 325, 329 (1986), quoting *Commonwealth* v. *Tatisos,* 238 Mass. 322, 325 (1921). Here, neither defense counsel nor the judge raised any questions about Mann's competency. Accordingly, we will assume that she was competent to testify at the defendant's pretrial detention hearing. See *Commonwealth* v. *Echavarria,* 428 Mass. 593, 595-596 (1998) (test for competence "not very stringent"); *Commonwealth* v. *Sylvia,* 35 Mass. App. Ct. 310, 312 (1993) (physically frail witness deemed competent to testify).

[9]We acknowledge that Mann's testimony at the defendant's pretrial detention hearing was given "in a proceeding addressed to substantially the same issues as in the current proceeding." *Commonwealth* v. *Trigones,* 397 Mass. 633, 638 (1986), quoting *Commonwealth* v. *Meech,* 380 Mass. 490, 494 (1980). At the pretrial detention hearing, the Commonwealth had the burden of presenting evidence of the defendant's "dangerousness" in order to have

sary element for admitting prior testimony of unavailable witness
is opportunity for cross-examination of witness at prior hearing
by person against whom testimony is being offered); *Commonwealth* v. *Meech, supra* at 494-495. Prior to commencing her
cross-examination of Mann, defense counsel stated that she would
be "[v]ery brief, and if [Mann] can't answer, that's okay." The
entire cross-examination is reproduced in the margin.[10] Defense
counsel's statement reflected a legitimate concern that Mann's

him held in custody pending trial. See G. L. c. 276, § 58, third par.; G. L.
c. 276, § 58A; *Mendonza* v. *Commonwealth*, 423 Mass. 771, 774 (1996). To
satisfy this burden, the Commonwealth presented testimony both that the
defendant struck Mann repeatedly, and that he made telephone calls to her in
violation of the G. L. c. 209A order. Although the matter of the c. 209A order
has been resolved, see note 5, *supra*, the issue of the defendant's purported
assault and battery of Mann was a focus of the pretrial detention hearing, in
the context of showing that the defendant's continued release on bail would
pose a danger to Mann, and also would be the central point of his trial.

[10]   *Q.*: "(Inaudible)?"

   *A.*: "Yeah."

   *Q.*: "Did Mr. Timothy House, who is Lucien's lawyer, did he call you,
   do you remember him calling you?"

   *A.*: "Yes."

   *Q.*: "Did he request that you sign documents about (inaudible) Mr. Arrington's house?"

   THE PROSECUTOR: "Your Honor, I would object."

   THE JUDGE: "Why would you object?"

   THE PROSECUTOR: "Because this is a dangerousness hearing. I could argue
                   that this is not relevant."

   THE JUDGE: "So what; it involves telephone calls. It's okay, I'll allow
             it."

   *A.*: "I'm on this deed and he's worried that I'm going to take over his
   property which I'm not and I told him a million times I am not. I
   want nothing to do with this house."

   *Q.*: "You said Mr. Arrington called you eight times?"

   *A.*: "More than that."

   *Q.*: "Are you sure that it was Mr. Arrington who called you eight
   times?"

   *A.*: "Oh yeah."

   *Q.*: "I have no further questions."

medical condition was such that her ability to respond to questions posed on cross-examination appeared to be substantially compromised. As a consequence, defense counsel proceeded cautiously and limited her questions to those that related to the defendant's purported violations of the G. L. c. 209A order. Defense counsel was placed in the difficult position of having to balance her obligation to represent her client zealously with her recognition of the fact that, in all likelihood, Mann would be unable to handle vigorous cross-examination.[11] It would have been unreasonable to demand that defense counsel proceed more aggressively. In these unique circumstances, we conclude that defense counsel did not have a reasonable opportunity at the pretrial detention hearing to cross-examine Mann about the assault and battery.

We acknowledge that, given the evidence presented by the Commonwealth at the pretrial detention hearing, the defendant's motive to cross-examine Mann then would have been similar to his motive to cross-examine Mann at the subsequent trial, even though he was being represented by different attorneys. The focus of the earlier proceeding was the defendant's "dangerousness," given that the Commonwealth was seeking his detention under G. L. c. 276, § 58A, for alleged violations of the G. L. c. 209A order. To establish that the defendant posed a danger to Mann, the Commonwealth offered her testimony that the defendant not only made telephone calls to her in violation of the c. 209A order, but also struck her numerous times on the face, arms, and head, and kicked her. This same testimony would be offered by the Commonwealth at trial to establish that the defendant had committed assault and battery on Mann. Accordingly, at both the pretrial detention hearing and the subsequent trial, the motivation to cross-examine Mann would be an attempt to discredit her testimony as to the defendant's actions and to show that, in fact, he had not beaten her. See generally *Commonwealth* v. *Hurley,* *ante* 53, 60-62 (2009).

---

[11]In a letter dated July 11, 2007, from the attorney who represented the defendant at the pretrial detention hearing to counsel appointed to represent him on the assault and battery complaint, the former told the latter that she "held [her] cross-examination to a few brief questions because of the shape [Mann] was in." This letter was filed in the District Court as an attachment to the defendant's motion in limine and supporting memorandum of law.

In sum, although the defendant had a similar motivation for cross-examining Mann at the pretrial detention hearing, he lacked a reasonable opportunity to conduct that cross-examination. Accordingly, Mann's prior recorded testimony is not admissible as an exception to the hearsay rule. The judge did not abuse her discretion in allowing the defendant's motion in limine to exclude such testimony.[12]

*Order affirmed.*

---

[12]In similar circumstances, where a complainant is unlikely to survive long enough to testify at trial, the Commonwealth may preserve the complainant's testimony for trial by way of a pretrial deposition under Mass. R. Crim. P. 35, 378 Mass. 906 (1979).