PD-1340-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 11/13/2015 11:58:38 PM
Accepted 11/17/2015 10:35:43 AM
ABEL ACOSTA
CLERK

CASE NO.   PD-1340-15

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

**STEPHEN CLARK WEBB,**
Appellant

v.

**THE STATE OF TEXAS**,
Appellee

Petition from Cause No. 01-14-00174-CR, in the First Court of Appeals,
Sitting in Houston, Texas
Appealed from Cause No. 1389676 in the 337th District Court
of Harris County, Texas

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

**JOHN S. COSSUM**
TSB # 04854500
440 Louisiana, Suite 900
Houston, TX  77002
Telephone:  (713) 222-6134
Facsimile:   (713) 222-6144
E-Mail: jcossum@cossumlaw.com

ATTORNEY FOR PETITIONER,
STEPHEN CLARK WEBB

**ORAL ARGUMENT REQUESTED**

FILED IN
COURT OF CRIMINAL APPEALS

November 17, 2015

ABEL ACOSTA, CLERK

# IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                 STEPHEN CLARK WEBB

     Trial Counsel:         John S. Cossum
                          440 Louisiana, Suite 900
                          Houston, TX  77002
                          Telephone:  (713) 222-6134
                          Facsimile:  (713) 222-6144
                          E-Mail: jcossum@cossumlaw.com

     Appellate Counsel:    John S. Cossum
                          TSB # 04854500
                          440 Louisiana, Suite 900
                          Houston, TX  77002
                          Telephone:  (713) 222-6134
                          Facsimile:  (713) 222-6144
                          E-Mail: jcossum@cossumlaw.com

APPELLEE:                 STATE OF TEXAS

     Trial Counsel:         Devon Anderson - Harris County District Attorney
                          Markey Stroud - Assistant District Attorney at trial
                          1201 Franklin, Suite 600
                          Houston, Texas 77002
                          Telephone:  (713) 222-6134
                          Facsimile:  (713) 222-6144
                          Stroud_eric@dao.hctx.net

     Appellate Counsel:    Devon Anderson - Harris County District Attorney
                          Eric Kugler - Assistant District Attorney on appeal
                          1201 Franklin, Suite 600
                          Houston, Texas 77002
                          Telephone:  (713) 222-6134
                          Facsimile:  (713) 222-6144
                          kugler_eric@dao.hctx.net

TRIAL COURT:          337th District Court of Harris County
                          Hon Renee Magee

TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL. ........... ii.

TABLE OF CONTENTS. .......... iii.

INDEX OF AUTHORITIES. .......... iv.

STATEMENT REGARDING ORAL ARGUMENT. ........... 1

STATEMENT OF THE CASE. ........... 1

PROCEDURAL HISTORY. ........... 2

GROUNDS PRESENTED FOR REVIEW. ........... 3

ARGUMENT. ........................................................................ 4

**FIRST GROUND FOR REVIEW** .......................................... 4

> **The admission of hearsay statements by the trial court that were attributed to the Jane while she was sleeping was error. The Court of Appeals erred in not reversing the trial court and compounded its error when it ruled that even if there was error in the trial court's ruling, it was harmless error.**

I.      Reason for Review........................................................ 4

II.     Statement of Facts. ..................................................... 5

III.    Argument and Authorities........................................... 6

**SECOND GROUND FOR REVIEW** ......................................................... 8

    **The admission of hearsay statements made by Jane in response to questioning from her boyfriend after being awakened from a nightmare was error and not properly analyzed by the First Court of Appeals.**

    I.    Reason for Review.......................................................... 8

    II.   Statement of Facts. .......................................................... 9

    III.   Argument and Authorities............................................. 10

**THIRD GROUND FOR REVIEW**.......................................................... 13

    **The admission of the trial court not granting a motion for mistrial on the issue of the State violating the motion in limine was error. The Court of Appeals erred in not reversing the trial court.**

    I.    Reason for Review.......................................................... 14

    II.   Statement of Facts. .......................................................... 14

    III.   Argument and Authorities............................................. 15

PRAYER FOR RELIEF . ....................................................................... 17

CERTIFICATE OF COMPLIANCE................................................................ 17

CERTIFICATE OF SERVICE. .................................................................... 18

APPENDIX ....................................................................................... 19

# INDEX OF AUTHORITIES

Cases            Page

*Apolinar v State*, 155 S.W.3d 184 (Tex Crim App. 2005) . ................................. 9, 10, 11

*Commonwealth v Almeida*, 433 Mass. 717, 746 N.E.2d 139 (2001). ...... 6, 11, 33

*Godfrey v. State* 258 Ga. 28, 365 S.E.2d 93,94 (1998) .......................... 7, 11, 13

*Mayfield v. State*, 114 Tex.Crim 425, 25 S.W.2d 833 (1930).4, 5, 6, 7, 10, 11, 12

*McCarty v. State* 257 S.W.3d 238, 240 (Tex. Crim. App. 2008) ............ 9, 10, 11

*Mosley v. State* 983 S.W.2d. 249 (Tex. Crim. App. 1998). ......................... 13, 16

*State v. Alan*, 12 Neb. App. 261, 670 N.W.2d 814, 824 (2003). ............. 7, 11, 13

*State v. Posten* 302 N.W.2d 638 (Minn 1981). ....................................... 7, 12, 13

*Webb v. State*, 01-14-00174-CR (Tex.App.-Houston [1st Dist.] 4-2-2015). ....... 2

*Webb v. State*, 01-14-00174-CR (Tex.App.-Houston [1st Dist.] 9-10-2015). . 2, 8

Statutes and Rules

TEX. PENAL CODE §22.011. .............................................................................. 1

TEX. PENAL CODE §21.11. ................................................................................ 1

TEX.R. APP. PROC. 66.3(c) ........................................................................... 5,10

TEX.R. APP. PROC. 66.3(b)............................................................................ 5,10

TEX.R. EVID. 803(2)........................................................................................ 5

## STATEMENT REGARDING ORAL ARGUMENT

Appellant, Stephen Clark Webb ("Webb"), respectfully requests that this Court grant oral argument.  His petition raises an issue of first impression before this court, so oral argument would be helpful to assist the Court in deciding the issue .  Additionally, the First Court of Appeals' opinion did not address the issues as thoroughly as the law requires, and oral argument is necessary for a full and fair resolution.

## STATEMENT OF THE CASE

This case arises from a jury conviction of Webb for Indecency with a Child (Tex. Penal Code §22.011) arising from a grand jury indictment charging Appellant with Aggravated Sexual Assault of a Child (Tex. Penal Code §21.11). Sentence was assessed at 10 years in the Texas Department Of Criminal Justice, probated, and a $10,000.00 fine. Appeal was timely perfected raising eight grounds of error.

The 1st Court of Appeals ("the court of appeals") affirmed the conviction, erroneously holding that statements made by the Complainant ("Jane") in her sleep constituted admissible hearsay as excited utterances.  The court of appeals additionally and erroneously held that statements made by Jane about the dream in

1

response to questioning right after being awakened also constituted admissible hearsay as excited utterances.

## STATEMENT OF PROCEDURAL HISTORY

On April 2, 2015, the court of appeals affirmed Mr. Webb's conviction and sentence. *Webb v. State*, 01-14-00174-CR (Tex.App.-Houston [1st Dist.] 4-2-2015). A motion for rehearing was filed May 1, 2015. The motion for rehearing was denied on May 28, 2015. A motion for rehearing en banc was filed July 7, 2015. On September 10, 2015, the court of appeals withdrew its original opinion and substituted a new opinion and judgment affirming Mr. Webb's conviction. *Webb v. State*, 01-14-00174-CR (Tex.App.-Houston [1st Dist.] 9-10-2015). As part of that decision, the Court also denied the motion for rehearing en banc as moot. Mr. Webb now petitions this Court to exercise its discretionary review to reverse and vacate the First Court of Appeals' opinion, and remand to the trial court for a new trial.

# GROUNDS FOR REVIEW

1.  The admission of hearsay statements by the trial court that were attributed to Jane while she was sleeping was error. The court of appeals erred by failing to analyze the issue of error by the trial court and instead ruling that even if the admission of the testimony was error, it was harmless error.

2.  The admission of hearsay statements as excited utterances made by Jane in response to direct questioning from her boyfriend about her "sleep talk" was error and was improperly analyzed by the First Court of Appeals.

3.  The trial court's failure to grant a motion for mistrial after the State blatantly violated an order in limine was reverable error that the court of appeals failed to properly review.

## ARGUMENT

## FIRST GROUND FOR REVIEW:

**The admission of hearsay statements by the trial court that were attributed to Jane while she was sleeping was error. The court of appeals erred by failing to analyze the issue of error and instead ruling that even if the admission of the testimony was error, it was harmless error.**

The first issue raised in Webb's appeal was the error committed by the trial court in admitting statements made by Jane while she was asleep. Webb's second issue on appeal was the trial court's admission of statements made by Jane in response to questions after being awakened from her sleep. The court of appeals, in affirming Webb's conviction, refused to rule on Webb's first issue, deciding instead that any error was harmless, relying in large measure on its erroneous finding that the evidence made the subject of Webb's second issue on appeal was admissible (discussed below). In refusing to find the trial court's admission of such evidence error, the court of appeals' failed to consider at least one prior ruling of this Court finding statements attributed to witnesses inadmissible where it appeared the witness was not fully conscious when the statements were made. See *Mayfield v. State*, 114 Tex. Crim 425, 25 S.W.2d 833 (1930).

## I.     Reason for Review

The Court should grant discretionary review on Webb's First Ground for Review because the court of appeals' refusal to make a specific ruling on the

4

admissibility of "sleep talk" conflicts with the prior ruling from this Court in *Mayfield v. State*, 114 Tex. Crim 425, 25 S.W.2d 833 (1930). TEX.R.APP. PROC. 66.3(c). Additionally, the specific issue of "sleep talk" as an excited utterance has never been specifically addressed by the Court or analyzed in light of *Mayfield* and therefore is proper for consideration by the Court. TEX.R.APP. PROC. 66.3(b).

## II.      Statement of Facts

The State called as its first witness in the case against Mr. Webb the former boyfriend of Jane, Arman Jahangiri (hereinafter "the boyfriend"). The boyfriend testified that sometimes when they were sleeping, Jane would "have very extreme nightmares", (4 RR 26), that she would become "very frantic, inconsolable...as if she had seen a ghost" (4 RR 28) and that this happened while she was still asleep (4 RR 29). The boyfriend then testified, over Webb's hearsay objection, that Jane would cry out in her sleep "No, don't, Steve. Don't. Steve, no, no." (4 RR 30). This testimony came after the court, in ruling on the Webb's hearsay objection, found that while the statement was hearsay, it qualified as an excited utterances under Rule 803(2) of the Texas Rules of Evidence as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX.R. EVID. 803(2).

5

## III.  Argument and Authorities

In *Mayfield v. State*, 114 Tex. Crim 425, 25 S.W.2d 833 (1930), this Court held that statements made by the Complainant against Mayfield while unconscious in a hospital bed were improperly admitted by the trial court.  Specifically, the Court held that where "there was no question or controversy over the fact that at the time the statements were made, the witness was unconscious... (t)he learned trial judge fell into error in admitting the statements." *Mayfield* at 426.  Logically, in comparing the facts of *Mayfield* to the case at bar, there is no discernable difference between the reliability of statements made while unconscious and statements made while asleep in terms of reliability.  In refusing to follow this Court's ruling in *Mayfield*, the appeals court also failed to recognize the sound reasoning of Courts in other jurisdictions which have considered and ruled against the admissibility of "sleep talk" as an excited utterance. In *Commonwealth v Almeida*, 433 Mass. 717, 746 N.E.2d 139 (2001), in circumstances extremely similar to the case at bar, the statement "Jorge, get off of me. Jorge, get off of me" made by the Complainant while sleeping was found by the appeals court to be improvidently admitted into evidence because "(a)dmitting hearsay evidence of statements made while a person is sleeping, so-called "sleep talk", would run counter to one of the central principles governing the admissibility of evidence, namely, that the proffered material is reliable." *Id.* at 719. In *State v. Alan*, the

Nebraska court of appeals also excluded "sleep talk" evidence claimed to be admissible excited utterance hearsay, noting that "expressions of a person made while asleep are not admissible as spontaneous statements, since they proceed from an unconscious and irresponsible condition. It has been said that such expressions have little or no meaning, are as likely to refer to unreal facts or conditions as to things real, and are wholly unreliable" *State v. Alan*, 12 Neb. App. 261, 670 N.W.2d 814, 824 (2003). Similar results were reached by courts considering the issue of sleep talk in Georgia and Minnesota. See *Godfrey v. State* 258 Ga. 28, 365 S.E.2d 93,94 (1998) (sleep talk not sufficiently reliable to merit admission in evidence); *State v. Posten* 302 N.W.2d 638 (Minn 1981)(while dreams are in some sense connected to waking hour's desires and anxieties, there is no indication that dream sequences mirror actual events"). In the instant case, the same reasoning applied by this Court in *Mayfield* should have been applied to the case against Mr. Webb. If the court had done so, the statements of Jane while asleep would not have been admitted as evidence and caused harm to Mr. Webb.

The court of appeals decision, however, improperly avoids ruling on the issue of "sleep talk" by deciding instead that even if the trial court was wrong in admitting "sleep talk" testimony, there was no harm to Mr. Webb given other evidence in the case to substantiate his guilt. That other evidence, however, in

7

reading the Court's opinion, is heavily predicated on the Courts erroneous ruling in denying Mr. Webb's second point of error. Specifically, in reading the court of appeals' September 10, 2015 opinion, it is clear that the court's ruling concerning the admissibility of Jane's answers to questions posed about her "sleep talk" factored heavily into the court's finding that any error arising from the admission of "sleep talk" addressed in Mr. Webb's first ground for review was harmless:...

> "The statements made after she awoke provide much more detailed and direct evidence about what she was dreaming and why. Thus, any tendency of the sleep talk to reveal the contents of the dream is harmless because this other evidence provides stronger and more detailed evidence of the same matter asserted." *Webb v. State*, 01-14-00174-CR (Tex.App.-Houston [1st Dist.] 9-10-2015) p. 9

The problem with this line of thinking, however, and as set out more fully in the argument pertaining to Mr. Webb's Second Ground for Review, is that the inadmissibility of Jane's "sleep talk" should logically render the statements made in response to questions about the inadmissible "sleep talk" inadmissible as well. The court's harmless error analysis with regard to "sleep talk" is therefore fatally flawed because the major factor relied upon by the court in finding any error with regard to the admission of "sleep talk" harmless is the improper admission of Jane's other hearsay statements. If the testimony of the boyfriend about the statements made in his presence by Jane is excluded, the case becomes a swearing match ostensibly between Jane, on one hand, and Webb and Jane's entire

8

immediate family on the other. It is unreasonable to conclude a jury would have believed Jane over Mr. Webb and Jane's entire family but for the error in allowing Jane's improper hearsay statements relating to her "sleep talk" into evidence. As such, this Court's determination as to the propriety of admitting Jane's "sleep talk" statements is appropriate and necessary.

## SECOND GROUND FOR REVIEW:

**The admission of hearsay statements as excited utterances made by Jane in response to direct questioning from her boyfriend about her "sleep talk" was error and was improperly analyzed by the First Court of Appeals.**

The hearsay statements of Jane, in response to questioning about who she was referring to in her dream when she called out the name "Steve", were improperly admitted by the trial court as excited utterances over Mr. Webb's hearsay objection. In relying on Texas cases, some by this Court, including *Apolinar v. State*, 155 S.W.3d 184 (Tex Crim App. 2005) and *McCarty v. State* 257 S.W.3d 238, 240 (Tex. Crim. App. 2008) the court of appeals failed to properly distinguish the issue being presented from those in *Apolinar* and *McCarty* and, in doing so, committed error.

## I. Reason for Review

The Court should grant discretionary review on Webb's Second Ground for Review because the court of appeals' ruling that excited utterances made by Jane in

9

response to questioning about her "sleep talk" mistakenly relied on this Courts prior rulings in *Apolinar v State*, and *McCarty v. State,* and issued an opinion in conflict with this Courts ruling in *Mayfield v. State*, 114 Tex. Crim 425, 25 S.W.2d 833 (1930). TEX.R.APP. PROC. 66.3(c). Additionally, the specific issue of alleged excited utterances in response to questioning a witness about "sleep talk" has never been specifically addressed by the Court or analyzed in light of *Mayfield* and therefore is proper for consideration by the Court. TEX.R.APP. PROC. 66.3(b).

## II.     Statement of Facts

After Jane's boyfriend was allowed to testify over Mr. Webb's hearsay objection that Jane would cry out in her sleep  "No, don't, Steve.  Don't.  Steve, no, no." (4 RR 30), the State continued questioning the boyfriend about a conversation he had with Jane after waking her up one time.   As with the Court's ruling on Mr. Webb's hearsay objection to Jane's sleep talk, the Court allowed this testimony from the boyfriend as an excited utterance. After the objection was overruled, the boyfriend testified that on one occasion, after waking Jane up from a "nightmare" and questioning her about who she was referring to in her dream, Jane told him that the Steve she was referring to was "the person her mother had

10

married after her marriage with her father", and that "he had done things to her and he had touched her where he shouldn't have".  (4 RR 34).

## III.    Argument and Authorities

The issue before this court is not whether statements like those attributed to Jane would qualify as admissible excited utterances in circumstance such as those that existed in *Apolinar* and *McCarty*, but rather whether it is proper for such statements to be admitted where made in reference to comments made during "sleep talk". In the case at bar, the statements admitted were in response to a specific question posed by Jane's boyfriend about a name Jane had called out during "sleep talk".  Additionally, and significantly, the record shows that the statement admitted by the Court was being made in response to a question posed to Jane about another statement made by Jane during a dream, not an actual occurrence.  Given the unreliability of "sleep talk" testimony as articulated so well by courts in Massachusetts, Nebraska, Georgia and Minnesota in *Almeida,* 746 N.E.2d 139 (2001), *Alan*, 670 N.W.2d 814 (2003), *Godfrey* 365 S.E.2d 93 (1998) and *Posten* 302 N.W.2d 638 (Minn 1981), all of which were decided using the same rationale applied by this Court in *Mayfield*, it would defy logic that a court could properly decide that statements made about a dream are admissible while statements made during a dream are not.  The inherent lack of reliability and

11

inadmissibility of "sleep talk" statements articulated so well in the above cited court opinions call equally into question the reliability and therefore admissibility of statements made in response to questions concerning the inadmissible "sleep talk". The boyfriend's testimony indicates the question he asked was about a dream, not a real event, and there is no indication in the record that the response from Jane pertained to anything but the dream. By ignoring the origin of the questioning leading to Jane's statements, the court of appeals failed to properly analyze the issue and therefore erroneously upheld the trial court's admission of Jane's statements.

In rendering its opinion, however, the court failed to recognize that Jane's alleged excited utterances made in response to questioning from her boyfriend were necessarily predicated on the "sleep talk" giving rise to the questioning in the first instance. If the sleep talk was not admissible, how would the responses to questions arising from the sleep talk be admissible? Not only would the answers to questions lack context, but the questions are predicated on inadmissible hearsay (the sleep talk). As such, a fair evaluation of the merits of Mr. Webb's appeal requires this Court to evaluate whether "sleep talk" and statements made in response to questions about "sleep talk" can qualify as excited utterances in light of this Court's ruling in *Mayfield v. State,* 114 Tex. Crim 425, 25 S.W.2d 833 (1930)

12

and the many well reasoned opinions addressing the issue from Massachusetts, Nebraska, Minnesota and Georgia cited above, including *Almeida ,* 746 N.E.2d 139 (2001), *Alan*, 670 N.W.2d 814 (2003), *Godfrey* 365 S.E.2d 93 (1998) and *Posten* 302 N.W.2d 638 (Minn 1981).

## THIRD GROUND FOR REVIEW:

**The trial court's failure to grant a motion for mistrial after the State blatantly violated an order in limine was reverable error that the court of appeals failed to properly review.**

Prior to trial, the trial court granted Webb's motion in limine prohibiting the State from inquiring if Webb had provided illegal drugs to any person other than Jane.  The State violated the motion in limine and Webb requested a mistrial which was denied by the trial court.  Relying on *Mosley v. State* 983 S.W.2d. 249 (Tex. Crim. App. 1998), the court of appeals did not think the State's misconduct warranted a mistrial and in doing so, committed error.

## I.    Reason for Review

The Court should grant discretionary review on Webb's Third Ground for Review because the court of appeals misapplied the factors set forth in *Mosley v. State* ("the Mosely factors") in finding that the trial court did not error in refusing Mr. Webb's request for a mistrial in response to the State's brazen disregard of an order in limine granted before trial.  Specifically, the prosecutor was not only

forbidden, but agreed, she would not seek to introduce evidence indicating Mr. Webb had allegedly provided illegal substances to other people to bolster any claims he had provided drugs to Jane as part of the State's proof in the trial alleging Ms. Webb had committed aggravated sexual assault of a child.

## II.    Statement of Facts

Prior to the trial, the trial court entered an order in limine prohibiting the State from inquiring from any witness as to whether Appellant "ever smoked marihuana or provided any illegal drugs to any persons", excepting from its ruling the issue of whether Appellant provided any drugs to Jane (CR 116-121 at 118). The fact the State understood the order and was willing to abide by the order was underscored on the record by the prosecutor while the motion was being considered by the following exchange:

MS. STROUD:    "Your honor, certainly during the case-in-chief I don't anticipate... supplying the son with drugs would be relevant"

THE COURT:    "Okay, So - - and if something comes up where you feel something like that has become relevant in the case-in-chief, please approach before you go into that. So, any extraneous offense is granted except for the 38.14 - -

THE COURT:    If there's a question as to whether it is admissible or if you know there is going to be a question, just please approach the bench.

14

MS STROUD: At this time, Your Honor, as far as criminal conduct, the only thing that I am anticipating would come in in my case in chief is the indecency case.

(2 RR 18-19)

Thereafter, despite the State's representations to the trial court, and the specific instructions from the trial court, the prosecutor, out of the blue, and without any notice to the defense, or approaching the bench, asked Jane: "Do you know if the defendant gave Justin drugs?" (4 RR 104). Although Webb immediately objected and the objection was sustained before the witness could answer, the prosecutor glib response during a bench conference called by the Court that she "should have approached" and "was sorry". The Court then instructed the jury to disregard the prosecutor's question, but denied Webb's motion for a mistrial (4 RR 104-105). The insincerity of the prosecutor's apology, however, is underscored by the fact that, during the bench conference, she did not even make an attempt to explain any arguable basis for the question under the Rules of Evidence or how she would have justified trying to go into the subject matter had she actually asked to approach as she indicated she should have.

## III. Argument and Authorities

In affirming Mr. Webb's conviction, the court of appeals misapplied the Mosely factors articulated by this court in determining whether a trial court abused

15

its discretion in denying a motion for mistrial: 1) the severity of the misconduct; 2) the measures adopted to cure the misconduct; and, 3) the certainty of the defendant's conviction absent the misconduct. *Mosley v State* 983 S.W.2d at 259-260. While the court of appeals properly characterized the misconduct as severe, it in failed to properly evaluate the sufficiency of the trial court's curative efforts or the certainty of Mr. Webb's conviction absent the misconduct. Surprisingly, in its opinion, the court of appeals actually utilized Jane's testimony that Mr. Webb had supplied her drugs to mitigate the importance of the State's violation of the order in limine. To the contrary, Jane's testimony about being given drugs by Mr. Webb, rather than mitigating the State' violation, underscored the importance of having the order in limine in place and provided insight into the severity of the State's motivation in violating it. Additionally, in analyzing the third Mosely issue, the court of appeals pointed to the boyfriend's testimony concerning the statements made by Jane to him (testimony this petition is asking this court to find inadmissible) and the testimony of a prosecution expert whose testimony was completely neutralized by that of a defense expert. Finally, the appeals court claimed "state and federal investigations provided additional evidence of drugs in the home", a claim for which there is no support in the record. As such given the

appellate courts erroneous application of the Mosely factors to the facts of the case, a review of their analysis by this Court is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Mr. Webb respectfully requests that this Court grant his Petition for Discretionary Review, order briefing from all parties on the important issues raised herein, and that, after hearing oral argument, reverse and vacate the judgment of the First Court of Appeals and remand the case to the trial court for a new trial.

Respectfully submitted,

/s/ John S. Cossum
**JOHN S. COSSUM**
TSB # 04854500
440 Louisiana, Suite 900
Houston, TX 77002
Telephone: (713) 222-6134
Facsimile: (713) 222-6144
E-Mail: jcossum@cossumlaw.com

ATTORNEY FOR PETITIONER,
STEPHEN CLARK WEBB

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4 (i)(3), I certify that the document is in a 14 point font and that the number of words is 2703.

/s/ John S. Cossum
JOHN S. COSSUM

## CERTIFICATE OF SERVICE

As required by Texas Rule of Appellate Procedure 6.3 and 9.5(b), (d) and (e), I certify that a true and correct copy of the foregoing document has been delivered to all parties which are listed below via electronic transmission on this 12th day of November, 2015.

Eric Kugler
Assistant District Attorney on Appeal
TBC # 796910
Harris County District Attorney's Office
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826

ATTORNEY FOR RESPONDENT,
STATE OF TEXAS

/s/ John S. Cossum
**JOHN S. COSSUM**
State Bar No. 04854500
440 Louisiana, Suite 850
Houston, Texas 77002
Telephone: (713) 222-6134
Facsimile: (713) 222-6144
E-Mail: jcossum@cossumlaw.com

ATTORNEY FOR PETITIONER,
STEPHEN CLARK WEBB

# CASE NO.   PD-1340-15
## IN THE COURT OF CRIMINAL APPEALS
## OF TEXAS

**STEPHEN CLARK WEBB,**

> Appellant

vs.

**THE STATE OF TEXAS**,

> Appellee

## APPENDIX
## PETITION FOR DISCRETIONARY REVIEW

**Index:**

| | |
|---|---|
| 1 | Court of Appeals Judgment dated April 2, 2015 |
| 2-18 | Court of Appeals Opinion dated April 2, 2015 |
| 19 | Court of Appeals Judgment dated September 10, 2015 |
| 20-34 | Court of Appeals Opinion dated September 10, 2015 |
| 35-43 | 4 RR 26 - 4 RR 34 |



# JUDGMENT

# Court of Appeals

# First District of Texas

NO. 01-14-00174-CR

STEPHEN CLARK WEBB, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 337th District Court of Harris County.  (Tr. Ct. No. 1389676).

This case is an appeal from the final judgment signed by the trial court on February 19, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered April 2, 2015.

Panel consists of Chief Justice Radack and Justices Brown and Lloyd. Opinion delivered by Justice Brown.



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-14-00174-CR**
_____

**STEPHEN CLARK WEBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1389676**

---

**O P I N I O N**

A jury convicted Stephen Webb of indecency with a child.[1] In eight issues, Webb contends that the trial court erred by admitting inadmissible evidence and denying his motion for a mistrial. We affirm.

---

[1]    TEX. PENAL CODE ANN. § 21.11 (West 2011).

## Background

In 1996, Webb dated (and later married) the mother of the complainant, Jane,[2] and moved into Jane's home. Jane was ten years old at the time. After several years, Webb divorced Jane's mother and moved out of the house. As an adult, Jane disclosed to her boyfriend, her family, and police that Webb had sexually assaulted her when she was a child. Webb was arrested for aggravated sexual assault of a child.[3]

Before trial, the trial court granted a motion in limine preventing the State from soliciting evidence that Webb had given anyone other than Jane illegal drugs. At trial, the State called Jane, who recounted that when she was a child Webb had physically assaulted her, performed inappropriate massages on her, made her mow the lawn topless, shown her pornography, given her drugs and alcohol, and performed various other indecent acts. The State also asked Jane if Webb ever gave his younger son any illegal drugs—a question that violated the motion in limine. Webb objected before Jane could answer; the court sustained the objection and instructed the jury to disregard the question. Webb moved for a mistrial; the court denied his motion.

The State also called Jane's boyfriend, who recounted that Jane, now an adult, would have terrible nightmares. During the nightmares, she would cry out

---

[2]     We refer to the complainant by this pseudonym to protect her identity.
[3]     TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014).

2

Webb's name. He described how she eventually told him about the abuse. Webb objected to this testimony as inadmissible hearsay; the court overruled the objection.

The State's other witnesses included the investigating police officer and a child-abuse expert. The State then rested.

During his case-in-chief, Webb called Jane's mother to testify about Webb's behavior during their marriage and to discredit portions of Jane's story. On cross-examination, the State asked Jane's mother whether Webb was in another relationship when he began a relationship with her. The State also asked about Webb's relationships with his two sons from an earlier marriage. Webb objected to the relevance of this evidence; the court overruled his objections.

Webb called several other witnesses and then rested. The jury convicted him of a lesser-included offense, indecency with a child. Punishment was assessed at ten years' incarceration, suspended for ten years' community supervision. Webb timely appealed.

## Evidentiary Objections

In his first five issues, Webb contends that the trial court improperly admitted hearsay testimony and irrelevant evidence.

**A.      Standard of review**

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *Walker*, 321 S.W.3d at 22.

To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and receive a ruling from the trial court. TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The party must object every time the evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

**B.      Sleep talking**

In his first issue, Webb contends that the trial court erred by admitting testimony from Jane's boyfriend that during violent nightmares she would cry out, "No, don't, [Webb]. Don't. [Webb], no, no." Webb objected to these statements as hearsay; the trial court overruled this objection.

First, we must determine whether somniloquy falls under the rule against hearsay. Hearsay is any out-of-court statement "offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). In Texas, the rule covers both

explicit assertions and "any matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." TEX. R. EVID. 801(e). The statements Jane made while asleep do not explicitly assert anything but do imply that, in her dream, she was in conflict with Webb, or at least a man sharing Webb's name. Accordingly, we conclude that, under the circumstances of this case, these statements were implied hearsay. *See Drone v. State*, 906 S.W.2d 608, 611–12 (Tex. App.—Austin 1995, pet. ref'd); *Mosley v. State*, 141 S.W.3d 816, 830 (Tex. App.—Texarkana 2004, pet. ref'd).

Second, we must determine whether the statements qualify for one of the exceptions to the rule against hearsay. In this case, the State successfully argued to the trial court that the sleep statements were excited utterances. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2).

The statements in question were made during or immediately after Jane's nightmare. Jane was highly agitated. That many years had passed since the alleged abuse does not affect our analysis; "under the excited-utterance exception, the startling event may trigger a spontaneous statement that relates to a *much earlier* incident." *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008). These sleep statements meet the requirements for an excited utterance.

5

Webb cites numerous courts outside of Texas that have held that sleep statements are far too unreliable to be admissible. Notably, many of these cases analyzed the issue either in the context of a hearsay exception for "trustworthy" statements[4] or by considering objections to both hearsay *and* relevance. *See Com. v. Almeida*, 746 N.E.2d 139, 141 (Mass. 2001) ("Admitting hearsay evidence of statements made while a person is sleeping, so-called 'sleep talk,' would run counter to one of the central principles governing the admissibility of evidence, namely, that the proffered material is reliable."); *In re Interest of Jamie P.*, 670 N.W.2d 814, 824 (Neb. Ct. App. 2003) (statements of sleeping child were not product of conscious thought and therefore not excited utterances and not sufficiently trustworthy to be admitted under guarantee-of-trustworthiness hearsay exception); *Godfrey v. State*, 365 S.E.2d 93, 93 (Ga. 1988) (sleep statements do not qualify for hearsay exception for certain statements with "sufficient indicia of reliability"). Other courts have refused to make such a broad, bright-line rule. *See Gardiner v. State*, 444 S.E.2d 300, 304 (Ga. 1994) (weight and credibility of sleep talk is province of jury); *State v. Posten*, 302 N.W.2d 638, 641 (Minn. 1981) (sleep talk may be reliable under some circumstances but not others). In some

---

[4]  In Texas, the excited-utterance exception does not require a special guarantee of trustworthiness. *Compare* TEX. R. EVID. 803(2) *with* TEX. R. EVID. 803(5)–(8), (24) *and* TEX. CODE CRIM. PROC. ANN. art. 38.072 § 2(b)(2) (West Supp. 2014). Of course, a statement may meet the excited-utterance requirements yet be inadmissible under other rules or statutes.

circumstances, a sleeping declarant may be uniquely reliable. Deborah Rosenthal, *Voices from Darkness: The Evidentiary Admissibility of Sleep Talk*, 30 U.S.F.L. REV. 509, 517 (1996) ("Clearly, somniloquy resulting from psychic conflict or environmental or post-traumatic stress could be useful as evidence of events causing conflict and stress, such as murder or sexual abuse.").

A review of Texas court opinions has produced only one case on point: *Mayfield v. State*, 25 S.W.2d 833, 834 (Tex. Crim. App. 1930). In that case, the victim either jumped or was thrown out of an automobile. She was found unconscious and remained in that state until she expired. The Texas Court of Criminal Appeals ruled that several statements she made while unconscious were inadmissible hearsay under a common-law rule that when a "declaration is offered, it must appear that the declarant was mentally conscious." *Id.*

We conclude that *Mayfield* does not apply to this case because the common-law rule that it relied upon has been supplanted by the Texas Rules of Evidence. The statements in question fall within the express requirements for the excited-utterance exception. The excited-utterance exception articulated in the Rules is "based on the assumption that the declarant is not, at the time of the statement, capable of the kind of reflection that would enable him to fabricate information." *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005). A sleeping declarant would not be capable of such reflection.

Whether sleep talk is nevertheless unreliable is ultimately a question of (1) whether, under Rule 402, such evidence has any probative value and, if yes, (2) whether, under Rule 403, the probative value is substantially outweighed by the unfairly prejudicial or confusing effect of sleep statements. *See Almeida*, 746 N.E.2d at 142 ("That [declarant] was having some form of dream about the defendant, the contents of which are entirely unknown, sheds no light on whether she had actually been sexually assaulted by him. Furthermore, the prejudicial nature of such evidence far outweighs its minimal probative value."); *Godfrey*, 365 S.E.2d at 94 (1988) ("The child's outcry in his sleep is no more reliable than the dream itself."). But we do not address the reliability of sleep talk because Webb objected under Rule 802, which prohibits hearsay, not under Rule 402 or Rule 403.

We overrule Webb's first issue.

## C.    Explanation of nightmare

In his second issue, Webb contends that the trial court erroneously admitted hearsay statements that Jane made to her boyfriend about the nightmares shortly after awakening from one. The trial court admitted the statements as excited utterances.

Before asking the witness to disclose what Jane said, the State laid the following predicate for the excited-utterance exception:

Q:    And when you woke [Jane] up, was she calm?

A:	The exact opposite of calm.

Q:	Describe how she was.

A:	She was in full tears, still pushing me away . . . .

Over Webb's objection, the prosecutor asked what Jane said "while she was still upset and crying." The witness responded:

A:	She—she said that—I kept asking what had he done to you, and she was crying at this point. I was—I was crying as well, but she said that he had—that he had—he had done things to her and he had touched her where he shouldn't have, and we both started crying and—

Q:	Now, when you say "he," who was she talking about?

A:	[Webb].

Jane made statements about the abuse she had just relived in her nightmare. Given that she had just woken up from her nightmare and was "upset," "crying," "in full tears," and "the exact opposite of calm," the trial court did not abuse its discretion by concluding that she was under the stress of this event when making these statements. *See McCarty*, 257 S.W.3d at 240 (statements made when re-startled may be excited utterances).

Webb argues that a nightmare cannot be a startling event for purposes of the excited-utterance exception. He distinguishes this case from *Apolinar v. State*, 155 S.W.3d 184 (Tex. Crim. App. 2005). There, the declarant was beaten unconscious; he spent four days either unconscious or heavily medicated, and thus did not have

9

the opportunity to reflect before discussing the assault. *Apolinar*, 155 S.W.3d at 189–90. The court held that, when he was finally able to speak about the assault, he was still startled by it, and thus his statements were excited utterances. *Id.* Webb distinguishes this case from *Apolinar* because the startling event here is the nightmare, not the trauma.

We acknowledge this distinction, but it does not affect our analysis because *Apolinar* does not abolish the general principle that the startling event "need not necessarily be the crime itself." *Hunt v. State*, 904 S.W.2d 813, 816 (Tex. App.—Fort Worth 1995, pet ref'd); *accord McCarty*, 257 S.W.3d at 240. For example, in *Hunt* a television program rekindled a child's fear that she would become pregnant from sexual abuse suffered three months prior. *Hunt*, 904 S.W.2d at 816. And in *McCarty*, a benevolent tickle deeply upset a child because her abuser also tickled her "but went much further." *McCarty*, 257 S.W.3d at 240. In both cases, the trial court did not err by admitting the ensuing statements as excited utterances. *Id.*; *Hunt*, 904 S.W.2d at 816.

Webb argues that cases like *McCarty* are distinguishable because the startling event "had nothing to do with who was tickling [the declarant]." But this is a distinction without a difference. In both *Hunt* and *McCarty*, the declarant was startled by an event that reminded her of prior trauma. This case presents the same fact pattern.

Finally, Webb complains that the record does not specify whether Jane described events from her real-world memories or from her dream. This may (or may not) be a relevance issue, but Webb only objected to hearsay. Accordingly, we do not address this argument. *See* TEX. R. APP. P. 33.1.

We overrule Webb's second issue.

## D. Defendant's relationships

In his third through fifth issues, Webb contends that the trial court erroneously admitted evidence that Webb was living with another woman while dating Jane's mother and that Webb had poor relationships with his two sons. Webb argues that this evidence was not relevant.

This evidence was solicited several times during the trial. At times, Webb failed to object. Webb failed to object to the following testimony from Jane's mother concerning the start of her relationship with Webb:

Q:   At the time you met [Webb], was he married?

A:   No.

Q:   Was he in a relationship?

A:   Yes.

Q:   And who was he in a relationship with?

A:   Her name was . . . .

He also did not object to the following question and answer from the same witness:

11

> Q: And [while you were dating Webb] he was living part of the time out in California with [Webb's significant other]?
>
> A: Yes.

He also failed to timely object to the relevance of the following testimony from Jane's mother about Webb's relationships with his sons:

> Q: Now, at the time that you married [Webb], you indicated he had two children . . . correct?
>
> A: Yes.
>
> Q: Did he have any type of . . . relationship[s] with his sons? How would you describe his relationship[s] with his sons?
>
> A: It seemed okay.

To successfully preserve the erroneous admittance of evidence for appellate review, a party must timely object every time the evidence is offered. *Ethington*, 819 S.W.2d at 858. Assuming without deciding that the admission of this evidence was in error, Webb did not preserve the error because he did not consistently object when the State solicited this testimony. We overrule Webb's third through fifth issues.

## Motion for Mistrial

In his sixth issue, Webb contends that the trial court erred by denying his motion for a mistrial.

**A.    Standard of review**

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A prompt instruction from the trial judge is usually enough to cure the error and avoid the need for a mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

When assessing action on a motion for mistrial, "[d]eterminations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). An appellate court views the evidence in the light most favorable to the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

## B.    Instruction to disregard

Before trial, the trial court granted a motion in limine prohibiting the State from asking if Webb had distributed illegal drugs to any person other than Jane. The court told the State that it should approach the bench before asking any question precluded by the motion.

The State violated the motion in limine when it asked Jane: "Do you know if [Webb] gave [his younger son] drugs?" The State did not approach the bench before asking the question. Immediately, Webb objected. At the ensuing bench conference, the State apologized. The trial court then issued the following instruction to the jury: "You are instructed to disregard that question and not consider it for any reason whatsoever." Webb then timely moved for mistrial, which the trial court denied.

To determine if the trial court abused its discretion by denying a motion for mistrial, we use the three-factor test announced in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998). We look to three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Carballo v. State*, 303 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (applying *Mosley* factors to denial of motion for mistrial).

For the first *Mosley* factor, we examine "the severity of the misconduct, or in other words, the magnitude of the prejudicial effect of the prosecutor's [misconduct]." *Archie*, 340 S.W.3d at 740. A prosecutor's attempt to circumvent a motion in limine is serious misconduct. *See Scruggs v. State*, 782 S.W.2d 499, 502 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). But the magnitude of the prejudicial effect of this action was somewhat mitigated by the particular circumstances of this case. First, the prosecutor promptly moved on and did not revisit the issue. Second, other evidence linked Webb to illegal drugs. Jane testified that Webb had given her drugs and alcohol. And Webb asked Jane's mother on direct examination about various CPS and FBI investigations into "rampant drug abuse and pornography in the house."

For the second *Mosley* factor, "the reviewing court considers the character of the measures adopted to cure the misconduct." *Archie*, 340 S.W.3d at 741. In this case, the trial court promptly instructed the jury to disregard the question. An instruction to disregard is presumed effective unless the particular facts imply otherwise. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

For the third *Mosley* factor, "the reviewing court looks to the certainty of conviction absent the misconduct." *Archie*, 340 S.W.3d at 741. The State's evidence included Jane's testimony recounting her abuse, her boyfriend's testimony about her nightmares and outcry, a police officer's testimony about his

15

investigation of the case, and expert-witness testimony explaining how the facts of this case match traditional patterns of abuse. The defense focused on Webb and Jane's family, who disagreed with various parts of Jane's story. Thus, this case came down to a credibility determination: did the jury believe Jane was telling the truth? The State's improper question did not significantly affect the believability of Jane's account because: (1) the question was posed to Jane, not to a corroborating witness; (2) Jane had already testified that Webb gave her illegal drugs; (3) the state and federal investigations provided additional evidence of drugs in the home, and (4) drug use formed only a small part of Jane's story.

Given our analysis of the *Mosley* factors, we conclude that the State's misconduct did not warrant the extraordinary remedy of a mistrial. Accordingly, we overrule Webb's sixth point of error.

## Cumulative Effect

In his seventh and eighth issues, Webb contends that the cumulative harm of the alleged errors warrants reversal of his conviction. But we have found no reversible error in the trial court's evidentiary rulings or in its decision to deny Webb's motion for mistrial. Accordingly, we overrule Webb's seventh and eighth issues.[5]

---

[5] The State argues that cumulative harm from multiple errors is not a proper issue for appeal. Because there is no cumulative harm, we do not address this argument.

## Conclusion

We affirm the judgment of the trial court.


Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Publish. TEX. R. APP. P. 47.2(b).

17



# JUDGMENT

# Court of Appeals

# First District of Texas

NO. 01-14-00174-CR

STEPHEN CLARK WEBB, Appellant

V.

THE STATE OF TEXAS, Appellee

Appeal from the 337th District Court of Harris County.   (Tr. Ct. No. 1389676).

This Court today considered a motion for rehearing filed by appellant, Stephen Clark Webb.   We order that the motion be overruled and that this Court's former judgment of April 2, 2015, be vacated, set aside, and annulled.   We further order this Court's opinion of April 2, 2015, withdrawn.

This case is an appeal from the final judgment signed by the trial court on February 19, 2014. After submitting the case on the appellate record and the arguments properly raised by the parties, the Court holds that the trial court's judgment contains no reversible error. Accordingly, the Court **affirms** the trial court's judgment.

The Court **orders** that this decision be certified below for observance.

Judgment rendered September 10, 2015.

Panel consists of Chief Justice Radack and Justices Brown and Lloyd. Opinion delivered by Justice Brown.



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00174-CR

_____

**STEPHEN CLARK WEBB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1389676**

---

### MEMORANDUM OPINION ON REHEARING

Stephen Clark Webb filed a motion for reconsideration en banc. We withdraw our opinion and judgment and substitute the following opinion and judgment in their place. The motion for reconsideration en banc is rendered moot by our substitution of the new opinion, and is therefore denied. *Hudson v. City of*

*Houston*, 392 S.W.3d 714, 717 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 272 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

A jury convicted Webb of indecency with a child.[1] In eight issues, Webb contends that the trial court erred by admitting inadmissible evidence and denying his motion for a mistrial. We affirm.

### Background

In 1996, Webb dated (and later married) the mother of the complainant, Jane,[2] and moved into Jane's home. Jane was ten years old at the time. After several years, Webb divorced Jane's mother and moved out of the house. As an adult, Jane disclosed to her boyfriend, her family, and police that Webb had sexually assaulted her when she was a child. Webb was arrested for aggravated sexual assault of a child.[3]

Before trial, the trial court granted a motion in limine preventing the State from soliciting evidence that Webb had given anyone other than Jane illegal drugs. At trial, the State called Jane, who recounted that when she was a child Webb had physically assaulted her, performed inappropriate massages on her, made her mow the lawn topless, shown her pornography, given her drugs and alcohol, and

---

[1]    TEX. PENAL CODE ANN. § 21.11 (West 2011).
[2]    We refer to the complainant by this pseudonym to protect her identity.
[3]    TEX. PENAL CODE ANN. § 22.021 (West Supp. 2014).

2

performed various other indecent acts. The State also asked Jane if Webb ever gave his younger son any illegal drugs—a question that violated the motion in limine. Webb objected before Jane could answer; the court sustained the objection and instructed the jury to disregard the question. Webb moved for a mistrial; the court denied his motion.

The State also called Jane's boyfriend, who recounted that Jane, now an adult, would have terrible nightmares. During the nightmares, she would cry out Webb's name. He described how she eventually told him about the abuse. Webb objected to this testimony as inadmissible hearsay; the court overruled the objection.

The State's other witnesses included the investigating police officer and a child-abuse expert. The State then rested.

During his case-in-chief, Webb called Jane's mother to testify about Webb's behavior during their marriage and to discredit portions of Jane's story. On cross-examination, the State asked Jane's mother whether Webb was in another relationship when he began a relationship with her. The State also asked about Webb's relationships with his two sons from an earlier marriage. Webb objected to the relevance of this evidence; the court overruled his objections.

Webb called several other witnesses and then rested. The jury convicted him of a lesser-included offense, indecency with a child. Punishment was assessed at

ten years' incarceration, suspended for ten years' community supervision. Webb timely appealed.

## Evidentiary Objections

In his first five issues, Webb contends that the trial court improperly admitted hearsay testimony and irrelevant evidence.

### A.    Standard of review

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011); *Walker v. State*, 321 S.W.3d 18, 22 (Tex. App.—Houston [1st Dist.] 2009, pet. dism'd). We will uphold the trial court's ruling unless it falls outside the "zone of reasonable disagreement." *Tillman*, 354 S.W.3d at 435; *Walker*, 321 S.W.3d at 22.

To preserve the issue of erroneously admitted evidence, a party must make a timely and specific objection and receive a ruling from the trial court. TEX. R. APP. P. 33.1; *Geuder v. State*, 115 S.W.3d 11, 13 (Tex. Crim. App. 2003). The party must object every time the evidence is offered. *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991).

"The erroneous admission of a hearsay statement constitutes non-constitutional error that is subject to a harm analysis." *Coleman v. State*, 428 S.W.3d 151, 162 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). "We do not

overturn a conviction if, after examining the record as a whole, we have fair assurance that the error did not influence the verdict or had but a slight effect." *Id.*

## B.      Statements during and after Jane's nightmares

In his first issue, Webb contends that the trial court erred by admitting testimony from Jane's boyfriend that during violent nightmares she would cry out, "No, don't, [Webb]. Don't. [Webb], no, no." Webb objected to these statements as hearsay; the trial court overruled this objection, concluding that they fell within the excited-utterance exception to the rule against hearsay.

In his second issue, Webb contends that the trial court erroneously admitted hearsay statements that Jane made to her boyfriend about the nightmares shortly after awakening from one. The trial court also admitted the statements as excited utterances.

We will review the rule against hearsay, examine these issues in reverse order, and, ultimately, overrule both.

### 1.      The rule against hearsay and the excited-utterance exception

Hearsay is any out-of-court statement "offered in evidence to prove the truth of the matter asserted." TEX. R. EVID. 801(d). In Texas, the rule covers both explicit assertions and "any matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." TEX. R.

5

EVID. 801(e). Hearsay is inadmissible, unless the statement qualifies for an exception to the rule against hearsay. *See* TEX. R. EVID. 801–805.

In this case, the trial court concluded that Jane's sleep statements (issue one) and statements immediately after the nightmare (issue two) fell under the excited-utterance exception to the rule against hearsay. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2). "[U]nder the excited-utterance exception, the startling event may trigger a spontaneous statement that relates to a *much earlier* incident." *McCarty v. State*, 257 S.W.3d 238, 240 (Tex. Crim. App. 2008).

## 2. Explanation of nightmare

We begin with Webb's second issue: whether the trial court erroneously admitted hearsay statements that Jane made to her boyfriend about the nightmares shortly after awakening from one. Before asking the witness to disclose what Jane said, the State laid the following predicate for the excited-utterance exception:

Q: And when you woke [Jane] up, was she calm?

A: The exact opposite of calm.

Q: Describe how she was.

A: She was in full tears, still pushing me away . . . .

Q: Is this the first time you really pressed her?

6

A:     Yes, ma'am.

Q:     And did she finally tell you what she was dreaming, having a nightmare about?

A:     Yes, ma'am.

Over Webb's objection, the prosecutor asked what Jane said "while she was still upset and crying." The witness responded:

A:     She—she said that—I kept asking what had he done to you, and she was crying at this point. I was—I was crying as well, but she said that he had—that he had—he had done things to her and he had touched her where he shouldn't have, and we both started crying and—

Q:     Now, when you say "he," who was she talking about?

A:     [Webb].

Jane made statements about the abuse she had just relived in her nightmare. Given that she had just woken up from her nightmare and was "upset," "crying," "in full tears," and "the exact opposite of calm," the trial court did not abuse its discretion by concluding that she was under the stress of this event when making these statements. *See McCarty*, 257 S.W.3d at 240 (statements made when restartled may be excited utterances).

Webb argues that a nightmare cannot be a startling event for purposes of the excited-utterance exception. He distinguishes this case from *Apolinar v. State*, 155 S.W.3d 184 (Tex. Crim. App. 2005). There, the declarant was beaten unconscious; he spent four days either unconscious or heavily medicated, and thus did not have

7

the opportunity to reflect before discussing the assault. *Apolinar*, 155 S.W.3d at 189–90. The court held that, when he was finally able to speak about the assault, he was still startled by it, and thus his statements were excited utterances. *Id.* Webb distinguishes this case from *Apolinar* because the startling event here is the nightmare, not the trauma.

We acknowledge this distinction, but it does not affect our analysis because *Apolinar* does not abolish the general principle that the startling event "need not necessarily be the crime itself." *Hunt v. State*, 904 S.W.2d 813, 816 (Tex. App.— Fort Worth 1995, pet ref'd); *accord McCarty*, 257 S.W.3d at 240. For example, in *Hunt* a television program rekindled a child's fear that she would become pregnant from sexual abuse suffered three months prior. *Hunt*, 904 S.W.2d at 816. And in *McCarty*, a benevolent tickle deeply upset a child because her abuser also tickled her "but went much further." *McCarty*, 257 S.W.3d at 240. In both cases, the trial court did not err by admitting the ensuing statements as excited utterances. *Id.*; *Hunt*, 904 S.W.2d at 816.

Webb argues that cases like *McCarty* are distinguishable because the startling event "had nothing to do with who was tickling [the declarant]." But this is a distinction without a difference. In both *Hunt* and *McCarty*, the declarant was startled by an event that reminded her of prior trauma. This case presents the same fact pattern.

8

Finally, Webb complains that the record does not specify whether Jane described events from her real-world memories or from her dream. This may (or may not) be a relevance issue, but Webb only objected to hearsay. Accordingly, we do not address this argument. *See* TEX. R. APP. P. 33.1.

We overrule Webb's second issue.

### 3. Sleep talking

We next turn to Webb's first issue: whether the trial court properly overruled his hearsay objection and admitted Jane's sleep talk—"No, don't, [Webb]. Don't. [Webb], no, no"—during the nightmare. But we do not reach this issue because any error from the admission of the sleep talk was harmless. The statements made after she awoke provide much more detailed and direct evidence about what she was dreaming and why. Thus, any tendency of the sleep talk to reveal the contents of the dream is harmless because this other evidence provides stronger and more detailed evidence of the same matter asserted.

And this was not the only evidence against Webb. In addition to Jane's boyfriend's testimony, Jane herself gave detailed testimony regarding various sexual assaults the she endured and a child-abuse expert explained to the jury how Jane's experiences corresponded to common patterns in long-term sexual assault cases.

We conclude that any error in overruling Webb's hearsay objection to the sleep talk was harmless. Accordingly, we overrule Webb's first issue.

## C.       Defendant's relationships

In his third through fifth issues, Webb contends that the trial court erroneously admitted evidence that Webb was living with another woman while dating Jane's mother and that Webb had poor relationships with his two sons. Webb argues that this evidence was not relevant.

This evidence was solicited several times during the trial. At times, Webb failed to object. Webb failed to object to the following testimony from Jane's mother concerning the start of her relationship with Webb:

Q:     At the time you met [Webb], was he married?

A:     No.

Q:     Was he in a relationship?

A:     Yes.

Q:     And who was he in a relationship with?

A:     Her name was . . . .

He also did not object to the following question and answer from the same witness:

Q:     And [while you were dating Webb] he was living part of the time out in California with [Webb's significant other]?

A:     Yes.

10

He also failed to timely object to the relevance of the following testimony from Jane's mother about Webb's relationships with his sons:

Q:      Now, at the time that you married [Webb], you indicated he had two children . . . correct?

A:      Yes.

Q:      Did he have any type of . . . relationship[s] with his sons? How would you describe his relationship[s] with his sons?

A:      It seemed okay.

To successfully preserve the erroneous admittance of evidence for appellate review, a party must timely object every time the evidence is offered. *Ethington*, 819 S.W.2d at 858. Assuming without deciding that the admission of this evidence was in error, Webb did not preserve the error because he did not consistently object when the State solicited this testimony. We overrule Webb's third through fifth issues.

**Motion for Mistrial**

In his sixth issue, Webb contends that the trial court erred by denying his motion for a mistrial.

**A.      Standard of review**

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999). "A mistrial is an appropriate remedy in 'extreme circumstances' for a narrow class of highly prejudicial and incurable errors." *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim.

11

App. 2009) (quoting *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). A prompt instruction from the trial judge is usually enough to cure the error and avoid the need for a mistrial. *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000). Whether an error requires a mistrial must be determined by the particular facts of the case. *Ladd*, 3 S.W.3d at 567.

When assessing action on a motion for mistrial, "[d]eterminations of historical fact and assessment of witness credibility and believability are left almost entirely to the discretion of the trial judge, and where there is conflicting evidence there is no abuse of discretion if the motion is overruled." *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000). An appellate court views the evidence in the light most favorable to the trial court's ruling. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). The ruling must be upheld if it was within the zone of reasonable disagreement. *Id.*

**B.    Instruction to disregard**

Before trial, the trial court granted a motion in limine prohibiting the State from asking if Webb had distributed illegal drugs to any person other than Jane. The court told the State that it should approach the bench before asking any question precluded by the motion.

The State violated the motion in limine when it asked Jane: "Do you know if [Webb] gave [his younger son] drugs?" The State did not approach the bench

12

before asking the question. Immediately, Webb objected. At the ensuing bench conference, the State apologized. The trial court then issued the following instruction to the jury: "You are instructed to disregard that question and not consider it for any reason whatsoever." Webb then timely moved for mistrial, which the trial court denied.

To determine if the trial court abused its discretion by denying a motion for mistrial, we use the three-factor test announced in *Mosley v. State*, 983 S.W.2d 249, 259–60 (Tex. Crim. App. 1998). We look to three factors: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct. *Carballo v. State*, 303 S.W.3d 742, 748 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *see Archie v. State*, 340 S.W.3d 734, 740 (Tex. Crim. App. 2011) (applying *Mosley* factors to denial of motion for mistrial).

For the first *Mosley* factor, we examine "the severity of the misconduct, or in other words, the magnitude of the prejudicial effect of the prosecutor's [misconduct]." *Archie*, 340 S.W.3d at 740. A prosecutor's attempt to circumvent a motion in limine is serious misconduct. *See Scruggs v. State*, 782 S.W.2d 499, 502 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). But the magnitude of the prejudicial effect of this action was somewhat mitigated by the particular circumstances of this case. First, the prosecutor promptly moved on and did not

revisit the issue. Second, other evidence linked Webb to illegal drugs. Jane testified that Webb had given her drugs and alcohol. And Webb asked Jane's mother on direct examination about various CPS and FBI investigations into "rampant drug abuse and pornography in the house."

For the second *Mosley* factor, "the reviewing court considers the character of the measures adopted to cure the misconduct." *Archie*, 340 S.W.3d at 741. In this case, the trial court promptly instructed the jury to disregard the question. An instruction to disregard is presumed effective unless the particular facts imply otherwise. *Waldo v. State*, 746 S.W.2d 750, 754 (Tex. Crim. App. 1988).

For the third *Mosley* factor, "the reviewing court looks to the certainty of conviction absent the misconduct." *Archie*, 340 S.W.3d at 741. The State's evidence included Jane's testimony recounting her abuse, her boyfriend's testimony about her nightmares and outcry, a police officer's testimony about his investigation of the case, and expert-witness testimony explaining how the facts of this case match traditional patterns of abuse. The defense focused on Webb and Jane's family, who disagreed with various parts of Jane's story. Thus, this case came down to a credibility determination: did the jury believe Jane was telling the truth? The State's improper question did not significantly affect the believability of Jane's account because: (1) the question was posed to Jane, not to a corroborating witness; (2) Jane had already testified that Webb gave her illegal drugs; (3) the

14

state and federal investigations provided additional evidence of drugs in the home, and (4) drug use formed only a small part of Jane's story.

Given our analysis of the *Mosley* factors, we conclude that the State's misconduct did not warrant the extraordinary remedy of a mistrial. Accordingly, we overrule Webb's sixth point of error.

## Cumulative Effect

In his seventh and eighth issues, Webb contends that the cumulative harm of the alleged errors warrants reversal of his conviction. We have already concluded that any error in admitting Jane's sleep talk was harmless, and we have found no other reversible error in the trial court's evidentiary rulings or in its decision to deny Webb's motion for mistrial. Accordingly, we overrule Webb's seventh and eighth issues.[4]

## Conclusion

We affirm the judgment of the trial court.

Harvey Brown
Justice

Panel consists of Chief Justice Radack and Justices Brown and Lloyd.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[4] The State argues that cumulative harm from multiple errors is not a proper issue for appeal. Because there is no cumulative harm, we do not address this argument.

emotion.

Q So initially she's a very private person?

A Very much so.

Q Would you say that she's closed off emotionally?

A Absolutely.

Q And was this a problem in your relationship?

A Yes, at first.

Q Now, after you and Tori developed a dating relationship and you began sleeping with her, did anything happen that caused you concern?

A Yes.

Q Can you tell the jury what that was?

A Very early on in our sleeping in the same bed, I would notice that Tori would have very extreme nightmares where she would scream and it would take me a while to calm her down or even to get her to wake up.

Q And can you describe what her actions were while she was sleeping?

A Yes. So she would start screaming, sometimes saying a name.

MR. COSSUM: Your Honor, I'm going to object to anything she said as being hearsay. If we may approach.

THE COURT: At this point she hasn't

asked what she said. Just go ahead and approach.

(Bench discussion:)

THE COURT: The question was not what she said.

MR. COSSUM: I started to hear the witness' answer and he was going to say some of the things she was going to say.

THE COURT: And your objection is going to be?

MR. COSSUM: That it's hearsay.

THE COURT: Okay. And your response?

MS. STROUD: I'm getting to the questions that will elicit the responses to make this an exception to hearsay, Your Honor.

THE COURT: And that would be what exception?

MS. STROUD: Excited utterance.

THE COURT: And do you intend to go into more than just what was said in her sleep?

MS. STROUD: Yes, ma'am. And I believe that that, too, will come under excited utterance.

THE COURT: Please develop that before you go into it --

MS. STROUD: Oh, absolutely.

THE COURT: -- what exactly was said and

then I'll make my ruling to establish --

MR. COSSUM: If I might need to voir dire him first, but maybe not if she establishes --

THE COURT: So wait for his objection before you ask that final question.

MS. STROUD: All right.

(In the hearing of the jury)

THE COURT: Okay. Proceed. It's overruled at this time.

Q (BY MS. STROUD) Mr. Jahangiri, we were talking about nightmares that Ms. Sutherland had that caused you concern.

A Yes, ma'am.

Q And you described that she would cry out; is that correct?

A In her sleep.

Q Is that the word that you used?

A Yes.

Q When she would cry out, describe specifically, not so much yet her words, but her demeanor, what was she expressing to you either through body language or whatever? Tell the jury what you were observing.

A She was very frantic, inconsolable. She would punch me away, push me away, and the amount of excitement as if she had seen a ghost or she was -- she

was frantic.

Q    At this point was she still asleep?

A    Yes.

Q    And what would you try to do?

A    At first I would try to just hug her and hold her closer and say "It's okay. Wake up. You're just having a nightmare."

Q    And is that when she would start pushing you away?

A    Yes.

Q    And she was still asleep during this time?

A    Yes.

MS. STROUD: Your Honor, I intend to ask my next question.

THE COURT: Ask your question. Please wait on your response until an objection, if any, is lodged.

You may proceed.

Q    (BY MS. STROUD) What was it that you were hearing Tori cry out in her sleep?

MR. COSSUM: Objection, Your Honor. Hearsay. And I've got some case law I'd like to share with the Court.

THE COURT: Okay. I'm going to allow this one portion, so that's overruled.

Q      (BY MS. STROUD)   What would you hear Tori cry out in her sleep?

A      She would say "No, don't, Steve.  Don't. Steve, no, no."

Q      Now, eventually would Ms. Sutherland wake up?

A      Eventually, yes.

Q      And did you ask her about what was going on, what the nightmare was about?

A      Eventually, yes.  Not the first few times.

Q      And why didn't you ask her the first few times?

A      I didn't -- it was early in our relationship. I didn't know if it had been a friend, an ex-boyfriend. I didn't really want to get into it.

Q      Didn't want to go there?

A      No, ma'am.

Q      Okay.  So eventually, though, did the nightmares continue?

A      Yes, ma'am.

Q      And did that cause you concern?

A      It did.

Q      And so at some point did you address what was going on with Ms. Sutherland?

A      Yes.  I asked who that name -- who she was referring to in her sleep.

Q     Before we get to that point, do you recall the events that led up to this conversation with Ms. Sutherland?

A     Could you clarify, please?

Q     When you finally spoke to Ms. Sutherland about what was going on, had she just had another nightmare?

A     Yes.

Q     Can you tell the jury -- let me ask you this. Do you specifically remember this event?

A     I specifically remember this event.

Q     And what happened?  How did it come about?

A     It was a Saturday afternoon.  We had both had exams the night before, so we were tired and we took an afternoon nap, and the events, as I described before, took place, screaming, kicking, inconsolable, excited, freaking out and pushing me away.  I eventually woke her up and said "What happened?  What is going on?"

Q     And when you woke her up, was she calm?

A     The exact opposite of calm.

Q     Describe how she was.

A     She was in full tears, still pushing me away. She kept saying "No, I don't want to talk about it," but I kept pressing her.

Q     Is this the first time you really pressed her?

A     Yes, ma'am.

Q    And did she finally tell you what she was dreaming, having a nightmare about?

A    Yes, ma'am.

Q    And what did she say?

MR. COSSUM:  Objection, Your Honor. Hearsay.

THE COURT:  Okay.  Do you want to approach the bench quickly?

MR. COSSUM:  Sure.

THE COURT:  One moment, sir.

(Bench discussion:)

THE COURT:  Did you have some case law you wanted to present on this?

MR. COSSUM:  Well, unfortunately the case law I had specifically on point had to do with sleep talking and that's why I lodged the objection at that point on that issue.  I'll also concede to the Court, at least in my research, I found nothing in Texas law on sleep talking itself.  I did find law in Minnesota and Massachusetts about it, talking about how -- go ahead.

MS. STROUD:  I'm just unsure what we're approaching about, Your Honor.  Are we approaching about the first objection or the second objection?

THE COURT:  I'm just giving you -- do you want to object to anything further than just the

hearsay?

MR. COSSUM: Well, if I may take him briefly on voir dire, because there's a couple of questions not asked by Ms. Stroud that are relevant as to whether or not it would constitute admissible hearsay under the excited utterance exception.

THE COURT: Well, where in the excited utterance does it state relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition? What is --

MR. COSSUM: Well, we're talking about -- I guess the question is, what is she claiming to be the startling event, the nightmare or something that happened?

THE COURT: Well, that's what you don't want him to get into, but that clearly is a startling event or the nightmare is the event. So unless you have something other than the case law you are presenting regarding sleep talking, I'm going to allow it in.

MR. COSSUM: Okay.

(In the hearing of the jury)

THE COURT: You may proceed.

That's overruled.

Q (BY MS. STROUD) So, Mr. Jahangiri, you

indicated that on this particular afternoon Ms. Sutherland had yet again another nightmare, yelling out, and you finally got her to wake up, and while she was still upset and crying, you finally pressed the issue and asked her what was wrong, what was going on, and what did she tell you?

A    She -- she said that -- I kept asking what had he done to you, and she was crying at this point.  I was -- I was crying as well, but she said that he had -- that he had -- he had done things to her and he had touched her where he shouldn't have, and we both started crying and --

Q    Now, when you say "he," who was she talking about?

A    Steve.

Q    And did she tell you who Steve was?

A    She did.

Q    And who did she say Steve was?

A    The person her mother had married after her marriage with her father.

Q    So her stepdad?

A    I believe so.

Q    Now, at this point what did you do?

A    She asked that we wouldn't talk about it, so for a while we didn't address it.